Brassard, J.
Plaintiffs John Weld, Jr. (“Weld”) and Jeffrey A. Kelley (“Kelley”) seek certification as a class in their action against CVS Pharmacy, Inc. (“CVS”) and others (collectively, “defendants”). In their original complaint, plaintiffs allege that defendants, for their own financial gain, improperly used confidential medical information provided to CVS by its pharmacy customers. Plaintiffs now seek class certification, arguing that defendants’ actions violated the privacy rights of plaintiffs and the class they seek to represent. Defendants oppose the motion, arguing that plaintiffs have not satisfied the requirements to be certified as a class. For the following reasons the motion is ALLOWED in part and DENIED in part.
BACKGROUND
CVS implemented a Patient Compliance Program (“PCP”) to provide health care information to its pharmacy customers. Using a database prepared from its records of customer prescriptions, CVS mailed letters to several of its pharmacy customers. Those customers were not previously informed of, or asked to consent to, this program. The mailings concerned different drugs and medical conditions, and took a variety of forms. Some provided information as to the risks of certain health conditions; some urged customers to switch to a new or alternative prescription medication; still others addressed the benefits of taking and refilling prescriptions as ordered by their physicians. The letters provided recipients with a box to check if they did not want to receive future mailings.
Although they were written under the CVS letterhead, the mailings were financed by the defendant drug manufacturers through separate agreements with CVS. No drugs other than those manufactured by the sponsoring pharmaceutical firms were recommended to customers who received the mailings.
CVS contracted with Elensys Care Services, Inc. (“Elensys”) to carry out the actual mailings. Their agreement provided that CVS would provide Elensys with information about customer prescriptions, and *22 that Elensys would take extensive precautions to protect the confidentiality of that information. Elensys engaged a mail fulfillment firm, W.A. Wilde (“Wilde”) to stuff envelopes and send out the letters. The agreement between Elensys and Wilde also contained strict confidentiality provisions.
As part of the PCP, Kelley, who takes the prescription medicine Glucotrol to control diabetes, received a mailing from CVS concerning the dangers of high cholesterol. High cholesterol is a known risk for diabetes patients. That mailing, which was targeted to CVS customers who were taking prescription diabetic medications, was sponsored by defendant Merck & Co., Inc. (“Merck”). Merck manufactures the anti-cholesterol prescription drug Zocor. To date, plaintiffs have presented no evidence that Weld received any of the PCP mailings.
In February 1998, reports concerning the PCP program first appeared in the press. On February 18, 1998, CVS announced that it was suspending the program. Plaintiffs filed this action two days later. Defendants CVS, Elensys, Merck and Glaxo moved for summary judgment. On June 21, 1999, this court (Fremont-Smith, J.) denied CVS’s motion for summary judgment as to Kelley on all counts [10 Mass. L. Rptr. 217). As to Weld, the court denied CVS’s motion without prejudice to renewal at the close of discovery. The court also denied without prejudice to renewal at the close of discovery the motions of Elensys, Merck and Glaxo for summary judgment. Plaintiffs now move for certification as a class pursuant to Mass.R.Civ.P. 23(a) and (b) and G.L.c. 93A.
DISCUSSION
The plaintiffs seek to certify as a nationwide class all CVS pharmacy customers residing in each of the 25 states where CVS conducts business.
Standing
Before addressing the question of class certification, the court must consider the issue of standing. Defendants argue that those CVS customers who did not receive PCP mailings do not have standing to bring this action because they have failed to demonstrate that they suffered an “injury in fact” from the PCP program. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To have standing to bring a claim, a plaintiff must demonstrate “an invasion of a legally protected interest which is a) concrete and particularized and b) ‘actual or imminent, not conjectural or hypothetical.’ ” Id., quoting Los Angeles v. Lyons, 461 U.S. 95, 102 (1983).
In deciding whether to certify a class, the court must take the substantive allegations of the plaintiff as true. See Blackie v. Barrack, 524 F.2d 891, 900 (Ninth Circuit, 1975). The cases, however, require plaintiffs to present sufficient factual information for the court to ascertain that the plaintiffs may have suffered, or are in danger of suffering, actual legal harm. See Doe v. The Governor, 381 Mass. 702, 704 (1980). Id. at 901. In making such a determination, a court must determine whether, if the plaintiffs prove their allegation of x, x will be a question of fact or law common to the class." Id. at 900, fn 16.
In this case, plaintiffs have not made a sufficient showing for the court to form a reasonable judgment that the alleged violation of privacy extended to those CVS pharmacy customers who did not receive a PCP mailing. Plaintiffs reliance on Pressman v. Brigham Medical Group, 919 F.Supp. 516 (D.Mass. 1996), is misplaced. In that case, the plaintiff had presented evidence that hospital officials who interviewed him had access to information that was available only in his medical records. The court held, therefore, that a jury must determine whether there had been an invasion of privacy. In contrast, these plaintiffs have presented no evidence that mere inclusion in the CVS database constituted any more of a violation of privacy than inclusion in any chain pharmacy’s prescription database. This case concerns the unauthorized use and/or disclosure of customer’s confidential prescription information. Plaintiffs have failed to establish that CVS prescription customers who did not receive mailings had any confidential information disclosed as part of the PCP. Consequently, plaintiffs will be unable to prove that CVS pharmacy customers who did not receive mailings suffered “an invasion of a legally protected interest . . . which is not conjectural or hypothetical.” See Lujan v. Defenders of Wildlife, supra, at 560. For purposes of standing, therefore, the class must be limited to CVS customers who received PCP mailings.
If the named representatives cannot maintain a cause of action, the class action is not viable. See Doe v. Governor, 381 Mass. 702, 704-5 (1980). Kelley, who received a mailing, has standing to maintain an action on behalf of those CVS customers who received PCP mailings. Weld, however, does not.
Nationwide Certification
The United States Supreme Court has addressed the issue of whether a state may certify a nationwide class of plaintiffs if that state does not permit prospective plaintiffs to “opt out” of the proceedings. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 811 (1985). A state wishing to bind an absent plaintiff must provide minimal due process protection, including notice, an opportunity to be heard, and the opportunity to remove oneself from the class. Id. at 812.
Mass.R.Civ.P.23(b), unlike its federal counterpart, does not permit a potential class member the opportunity to opt out of a class action. Consequently, a Massachusetts court may not properly exercise personal jurisdiction over a nationwide class of plaintiffs in a suit for money damages. Id.[3] See also Nark v. Siegel, Superior Court Civil Action No. 94-994 (Norfolk, September 30, 1999) (Brady. J.); Qual-Craft v. Realworld Corp., Superior Court Civil Action No. 98- *23 1186, 10 Mass. L. Rptr. 124 (Norfolk, February 24, 1999) (Connolly, J.).
Where a suit seeks predominantly injunctive relief, however, the absence of an opt-out provision may not bar certification of a nationwide class. In Phillips, the Court noted that its decision was “limited to those class actions which seek to bind known plaintiffs concerning claims wholly or predominately for money judgments. We intimate no view concerning other types of class actions, such as those seeking equitable relief.” Phillips v. Shutts, supra, at 810, fn3. In subsequent decisions, where the relief requested was primarily equitable, other jurisdictions have allowed certification of a nationwide class despite the absence of an opt-out provision. See Day v. Nlo, 851 F.Supp. 869, 885 (S.D.Ohio 1994) (in cases seeking primarily injunctive relief, opting out is generally not reasonable because “plaintiff-by-plaintiff injunctive relief is not practical, particularly for the defendant”).
Plaintiffs argue that they should be able to certify a nationwide class in this action because they seek primarily equitable relief. Courts have held, however, that monetary relief predominates in an action seeking injunctive relief unless the monetary relief is “incidental” to the requested injunctive or declaratory relief. See Allison v. Citgo Petroleum Corp., 151 F.3rd 402, 415 (5th Cir. 1998) (underlying premise for injunctive relief begins to break down when class seeks to recover monetary relief based on individual injuries). Incidental damages are defined as “those to which class members automatically would be entitled once liability to the class as a whole is established.” Id. Further, incidental relief has been characterized as “capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member’s circumstances.” Id. In this case, plaintiffs seek monetary damages on each of their claims, including damages resulting from the alleged tortious misappropriation of private and personal information, and recovery of all profits which the defendants have gained by their alleged unlawful conduct. Because such damages do not flow automatically to the class as a whole from the claims underlying the injunctive relief, and are not capable of computation by objective standards, plaintiffs have failed to establish that equitable claims predominate. Id.
Because Mass.R.Civ.P. 23 does not provide an opportunity for potential plaintiffs to opt out of the class action, and because monetary damages predominate in this action, plaintiffs are not entitled to nationwide certification as a class.
Certification in Massachusetts
To bring this action on behalf of a class certified only in Massachusetts, plaintiffs must establish that certification as a class meets the requirements set forth in Mass.R.Civ.P. 23. Mass. Coalition for the Homeless v. Secretary of Human Services, 400 Mass. 806, 822 (1987). A class action pursuant to G.L.c. 93A must also satisfy the requirements of Mass.R.Civ.P. 23. See Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 604 (1985).
Mass.R.Civ.P. 23 and G.L.c. 93A
Mass.R.Civ.P. 23(a) requires a plaintiff seeking class certification to show that:
1) The class is so numerous that joinder of all members is impracticable.
2) There are questions of law or fact common to the class.
3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
4) The representative parties will fairly and adequately protect the interests of the class.
In addition, Mass.R.Civ.P. 23(b) provides that a class may be certified only if:
The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
Numerosity
Neither party has provided the court with an estimate of the number of potential class members. CVS acknowledges, however, that approximately 2% of its prescription customers received PCP mailings. A class of CVS pharmacy customers in Massachusetts who received PCP mailings would satisfy the numerosity requirement. A court may make “common sense assumptions in order to support a finding of numerosity.” See Kirby v. Cullinet Software, 116 F.R.D. 303, 306 (D.Mass. 1987). Furthermore, the fact that the proposed class members are not located in the same geographic portion of the state supports a finding that the numerosity requirement is satisfied. Id. In this case, the fact that CVS has pharmacies throughout the state makes joinder of individual plaintiffs impracticable. Where joinder is impracticable, a class of 50 or 60 has been found sufficiently large to satisfy the numerosity requirement. See Holton v. L.F. Rothschild, 118 F.R.D. 280, 282 (D.Mass. 1987).
Common Issues of Law and Fact
To establish commonality, the plaintiffs seeking certification of the class must show that “all the persons whom they profess to represent have a common interest in the subject matter of the suit and a right and interest to ask for the same relief against the defendants.” See Spear v. H.V. Greene Co., 246 Mass. 258, 266 (1923). The interest of each member of the class does not have to be identical in all respects, but the “interest must arise out of a common relationship to a definite wrong.” Id. Defendants argue that there are no common issues of law and fact because plain *24 tiffs are bringing this action as a multiple-act personal injury case and there are individualized questions of fact that must be determined for each potential plaintiff. Defendants contend that because different plaintiffs may have had different medical conditions or may have received different types of letters, the evidence is too individualized to be considered in connection with a class action.
This case must be distinguished, however, from a case such as Nark v. Siegel, supra, which focused on “individual issues arising out of different contracts, damages and issues of misrepresentation and reliance.” In this case, the focus is not on different plaintiffs’ individual relationships with the defendants, but on the allegedly improper behavior of the defendants. Day v. NLO, supra, at 884. The thrust of plaintiffs’ complaint is that defendants’ misappropriation and misuse of class members’ private prescription information constituted a common course of conduct that unlawfully intruded into the privacy of all class members. This alleged misconduct does not depend on the content of a particular letter or on the medical condition of a particular CVS customer. The commonality requirement is generally satisfied where common questions of law and fact grow out of standardized conduct by defendants toward all or most of the proposed class members. See Duhaime v. John Hancock Mutual Life Ins. Co., 177 F.R.D. 54, 62 (D.Mass. 1997).
Typicality
To satisfy the typicality requirement, a class representative must be a member of the class he purports to represent. Cleary v. Commissioner of Public Welfare, 21 Mass.App.Ct. 140, 147 (1985). In this case, plaintiffs have presented evidence that CVS used Kelley’s confidential prescription information to arrange for Kelley to receive a mailing concerning high cholesterol from a drug company that manufactures a prescription medicine to control cholesterol. Thus, Kelley’s prescription information was allegedly misused by defendants and he is typical of the class he seeks to represent. There is no evidence before the court that Weld received PCP mailings or that CVS or the other defendants made improper use of Weld’s prescription information. Consequently, at this time Weld does not satisfy the typicality requirement.
Fair and Adequate Representation
For a plaintiff to be considered a fair and adequate representative of the class, a plaintiff must show that 1) no potential conflicts exist between the named plaintiff and the class members and 2) qualified, experienced counsel will vigorously conduct the proposed litigation. See Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).
The issue is not, as defendants suggest, whether some CVS customers in fact appreciated that CVS made their prescription information available to drug companies, but rather whether such action without the consent of the customer violated the customer’s right to privacy.[4] There is therefore, no indication that Kelley’s interests are antagonistic to those of other class members.
Plaintiffs have submitted resumes indicating that their attorneys are experienced and qualified in class litigation and will fairly and adequately protect the interests of the class.
Common Issues Predominate and Class Action Is Superior to Other Forms of Adjudication
In order to certify a class under Mass.R.Civ.P. 23(b), plaintiffs must show that common questions of law or fact predominate over questions affecting only individual members, and that the class action is superior to other available means of adjudication. See Fletcher, 394 Mass. at 601. As described in the discussion of commonality, the plaintiff in this case alleges a common course of conduct on the part of defendants. See Duhaime, 177 F.R.D. at 62.
Where resolution of a class action may result in “benefits to a large number of class members, many of whose claims are so small that their size does not provide the impetus to bring individual actions,” a class action has been found to be the preferred method of adjudication. See Berenson, 100 F.R.D. at 471. Similarly, a class action has been found appropriate to “vindicate the rights of individuals who otherwise might not consider it worth the trouble to embark on litigation in which the optimum result might be more than consumed by the cost.” See Guaranty National Bank v. Roper, 445 U.S. 326, 338 (1980).
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiff Kelley’s motion is ALLOWED to the extent that it seeks to certify a class of Massachusetts CVS pharmacy customers who received PCP mailings. Plaintiffs’ motion is DENIED to the extent that 1) it seeks to certify a nationwide class and 2) it seeks to include all Massachusetts CVS pharmacy customers in the class. Plaintiff Weld’s motion to serve as a representative of the class is DENIED.

In Phillips, a Kansas court was allowed to exercise personal jurisdiction over a class of absent plaintiffs because the Kansas class action statute contains an opt-out provision.

A brochure entitled The CVS Pharmacy Computer: “Working For You," assures customers that the only people who will have access to prescription information are “you, your CVS pharmacist and your doctor. CVS has always respected the confidentiality of the information in your prescription files and will continue to do so.”